SHOOK, HARDY & BACON L.L.P.
Tony M. Diab (SBN: 277343)
tdiab@shb.com
Jamboree Center, 5 Park Plaza, Suite 1600
Irvine, California 92614-2546
Telephone: 949.475.1500
Facsimile: 949.475.0016

Attorneys Plaintiff Mya Saray LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MYA SARAY LLC,

Plaintiff,

vs.

ZAHRAH CORPORATION, AAA WHOLESALE DISTRIBUTORS CORP., DOWNTOWN HOOKAH CONNECTION, INC., BOBBY FARARS (DBA US GLOBAL IMPORTS), and JOHN DOE DEFENDANT Nos. 1-10,

Defendants.

Case No. SACV13-01828
The Honorable Manuel L. Real

**MYA SARAY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT BY DEFAULT AGAINST AAA WHOLESALE DISTRIBUTORS CORP. PURSUANT TO FED. R. CIV. P. 55(B)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 1, 2014 at 10:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Manuel L. Real, Courtroom 8 – 2nd Floor of the above-entitled Court located at 312 N. Spring

Street, Los Angeles, CA 90012, Plaintiff Mya Saray LLC ("Mya Saray") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 55(b), for entry of a final judgment by default against Defendant AAA Wholsesale Distributors Corp. ("AAA Wholesale"). As part of the final judgment against AAA Wholesale, Mya Saray is entitled to the relief prayed for in its Complaint, including entry of a permanent injunction, as set forth in the Memorandum in support of this Motion filed herewith.

Counsel for Mya Saray was unable to conduct the conference of counsel pursuant to L.R. 7-3 as defendant AAA has not appeared in this matter and is not represented by counsel. The instant Motion and Memorandum in support have been served on AAA Wholesale as set forth in the attached proof of service.

Dated: September 29, 2014

SHOOK HARDY & BACON L.L.P.

By: *_/s/ Tony M. Diab_*
Tony M. Diab
Attorneys for Plaintiff Mya Saray LLC

# TABLE OF CONTENT

I. INTRODUCTION .......... 1

II. MYA SARAY REQUESTS THAT THE COURT ENTER A FINAL JUDGMENT BY DEFAULT AND GRANT MYA SARAY The RELIEF REQUESTED IN ITS COMPLAINT .......... 1

A. The Factual Allegations In Mya Saray's Complaint Establish AAA Wholesale's Liability for Trademark Infringement, Unfair Competition, and Patent Infringement .......... 2

B. The *Eitel* Factors Favor Entry of Default Judgment Against AAA Wholesale. 4

1. Prejudice .......... 4

2. Merits of Mya Saray's Substantive Claims and Sufficiency of the Complaint .......... 5

3. Amount of Money at Stake .......... 6

4. Possibility of Dispute Concerning Material Facts .......... 6

5. Whether Default Was Due to Excusable Neglect .......... 7

6. Policy Favoring Decision on the Merits .......... 7

C. Mya Saray Is Entitled To A Permanent Injunction As A Result Of AAA Wholesale's Trademark Infringement and Patent Infringement .......... 7

1. A Permanent Injunction Should Issue To Stop AAA Wholesale's Trade Dress Infringement And Unfair Competition .......... 8

2. A Permanent Injunction Should Issue To Stop AAA Wholesale's Patent Infringement .......... 9

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980) .......... 1

*Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521 (9th Cir. 1984) .......... 7

*Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230 (Fed. Cir. 1985) .......... 9

*Brookfield Commc'n v. West Coast Entm't,* 174 F.3d 1036 (9th Cir. 1999) .......... 4

*Coca-Cola Co. v. Alma-Leo USA, Inc.*, 719 F. Supp. 725 (N.D. Ill. 1989) .......... 9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) .......... 7

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986) .......... 1, 2, 5, 6

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165 (C.D. Cal. 2010) .......... 8

*Geddes v. United Fin. Group,* 559 F.2d 557 (9th Cir. 1977) .......... 1

*Henkel Corp. v. Coral, Inc.*, 21 U.S.P.Q.2d 1081 (N.D. Ill. 1990) .......... 11

*Hybritech, Inc. v. Abbott Labs.*,\ 4 U.S.P.Q.2d 1001 (C.D. Cal. 1987) .......... 12

*Internet Specialties West, Inc. v. Milon-Digiorgio Enters*, 559 F.3d 985 (9th Cir. 2009) .......... 8

*Joe Hand Promotions, Inc. v. Be*, 2011 WL 5105375, at *2 (N.D. Cal. Oct. 26, 2011) .......... 4

*LG Elecs., Inc. v. Advanced Creative Computer Corp.*, 212 F.Supp.2d 1171 (N.D. Cal. 2002) .......... 5

*Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002) .......... 4, 5, 6

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996) .......... 10

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 97, 603 (9th Cir. 1991) .......... 7

*Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) .......... 11, 12

*Vertos Med., Inc. v. Globus Med., Inc.*, 2009 U.S. Dist. LEXIS 110463, 32 (N.D. Cal. Nov. 6, 2009) .......... 8

*Zen Design Group, Ltd. v. Clint*, No. 08–cv–14309, 2009 WL 4050247, at *5 (E.D. Mich. Nov. 23, 2009) .......... 9, 10

**Statutes**

15 U.S.C. § 1114(1) .......... 2, 3, 4

15 U.S.C. § 1114(1)(a) .......... 4

15 U.S.C. § 1114(1)(b) .......... 2

15 U.S.C. § 1125(a)(1)(A) .......... 2, 3, 4

35 U.S.C. § 271(a) .......... 2, 3, 4

**Rules**

Fed. R. Civ. P. 55(b)(2) .......... 1

Fed. R. Civ. P. 55(a) .......... 1, 13

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff Mya Saray LLC ("Mya Saray") respectfully seeks entry of a final judgment by default against Defendant AAA Wholesale Distributors Corp. ("AAA Wholesale") AAA WholesaleAAA Wholesale. AAA Wholesale has failed to respond to Mya Saray's Complaint or otherwise join issue in this action in any way. Consequently, the Clerk of this Court duly entered a default against AAA Wholesale pursuant to Federal Rule of Civil Procedure 55(a). As part of the final judgment by default against AAA Wholesale, Mya Saray is entitled to entry of a permanent injunction, as set forth below.

## II. MYA SARAY REQUESTS THAT THE COURT ENTER A FINAL JUDGMENT BY DEFAULT AND GRANT MYA SARAY THE RELIEF REQUESTED IN ITS COMPLAINT

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977). The Court's decision whether to do so, while "discretionary," *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors, which are commonly referred to as the *Eitel* factors. The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Here, Mya Saray's factual allegations in its Complaint, which are taken as true, establish AAA Wholesale's liability for trademark infringement, unfair competition, and patent infringement. Further, for the reasons stated below, an evaluation of the *Eitel* factors supports the entry of a default judgment. Also, as explained below, entry of a permanent injunction to stop AAA Wholesale's infringing activity is appropriate.

### A. The Factual Allegations In Mya Saray's Complaint Establish AAA Wholesale's Liability for Trademark Infringement, Unfair Competition, and Patent Infringement

The Clerk entered default against the AAA Wholesale. (D.E. No. 22). Mya Saray's allegations in its Complaint, which are accepted as true, establish Defaulting Defendant's trademark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a)(1)(A), and patent infringement under 35 U.S.C. § 271(a). For example, with respect to AAA Wholesale's trademark infringement and unfair competition, Mya Saray's Complaint alleges, among other things, that:

- Mya Saray is the owner of federal trade dress Registration No. 3,845,276 ("QT Base trade dress"). (D.E. No. 1, at ¶ 7).

- The QT Base trade dress is distinctive and acts as an indicator of source such that the trade and relevant consumers associate and identify the QT Base trade dress with Mya Saray. (*Id*. at ¶ ¶ 8).

- AAA Wholesale imports, distributes, sells, and offers for sale a counterfeit hookah, called the "Simple" hookah, which is identical to Mya Saray's QT Base trade dress. (*Id*. at ¶ 15).

- AAA Wholesale's counterfeit "Simple" hookah, which contains an exact replica of the QT Base trade dress, creates a likelihood of confusion in violation of 15 U.S.C. § 1114(1)(b). (*Id*. at ¶ 19-20).

- AAA Wholesale's infringement of the QT Base trade dress has caused and continues to cause Mya Saray immediate and irreparable injury. (*Id*. at ¶ 21).

With respect to AAA Wholesale's patent infringement, the Complaint alleges, among other things, that:

- Mya Saray is the exclusive owner of United States Patent Nos. 7,806,123 ("the '123 patent") and 8,001,978 ("the '978 patent"), with authority to enforce such patents. (D.E. No. 1, at ¶ 9).

- Mya Saray has never licensed or permitted the Defendants to practice any of the legal rights granted under the '123 patent or '978 patent. (*Id*. at ¶ 31, 38).

- AAA Wholesale imports, sells, and offers for sale a counterfeit hookah, called the "Fine" hookah, in violation of the '123 patent. (*Id*. at ¶ 16, 32).

- AAA Wholesale imports, sells, and offers for sale counterfeit hookahs, called the "Simple" and "Modern" hookahs, in violation of the '978 patent. (*Id*. at ¶ 17, 39).

- Mya Saray has been and will continue to be damaged by the infringing activities of AAA Wholesale and will be irreparably harmed unless those infringing activities are enjoined by this Court. (*Id*. at ¶ 34, 41).

Accordingly, Mya Saray respectfully requests that the Court enter final judgment by default declaring that AAA Wholesale infringed Mya Saray's trade dress and patent rights, in violation of 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a)(1)(A), and 35 U.S.C. § 271(a).

### B. The *Eitel* Factors Favor Entry of Default Judgment Against AAA Wholesale

#### 1. Prejudice

The first *Eitel* factor considers whether Mya Saray would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Here, Mya Saray will be prejudiced if the Court did not enter a default judgment. Absent entry of a default judgment, Mya Saray will be without another recourse for obtaining an injunction against AAA Wholesale. "Denying judgment against a defendant who does not participate in litigation deprives the plaintiff of a remedy until such time as the defendant chooses to litigate." *Joe Hand Promotions, Inc. v. Be,* 2011 WL 5105375, at *2 (N.D. Cal. Oct. 26, 2011).

Accordingly, this factor favors the entry of a default judgment.

**2. Merits of Mya Saray's Substantive Claims and Sufficiency of the Complaint**

Taken together, the second and third factors essentially require that "a plaintiff state a claim on which [it] may recover." *Pepsico,* 238 F.Supp.2d at 1175 (internal quotations omitted). Here, Mya Saray asserts trademark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a)(1)(A), and patent infringement under 35 U.S.C. § 271(a).

To prevail on its trademark and unfair competition claims, Mya Saray must prove that, without its consent, AAA Wholesale used in commerce a reproduction or copy of Mya Saray's registered trade dress in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. *See* 15 U.S.C. § 1114(1)(a); *Brookfield Commc'n v. West Coast Entm't,* 174 F.3d 1036, 1046–47 (9th Cir. 1999). As outlined in Section II.A. above, Mya Saray has properly alleged all of these elements. Taking these allegations to be true, as the Court must, Mya Saray has adequately stated trademark infringement and unfair competition claim on which it may recover.

To succeed on its patent infringement claims, Mya Saray must prove that AAA Wholesale, without authority, imported, made, used, offered for sale, or sold hookahs covered by one or more claims of the '123 and '978 patents. *See* 35 U.S.C. § 271(a). As outlined in Section II.A. above, Mya Saray's Complaint states: (1) AAA Wholesale imported, sold, and/or offered for sale hookahs that infringe the claims of the '123 and '978 patents without license from Mya Saray; (2) this use violated 35 U.S.C. § 271(a), (3) the infringing importation, offer for sale, and ale was and continues to be deliberate; and (4) as a result of AAA Wholesale's conduct, Mya Saray has suffered injuries for which they will suffer irreparable harm under 35 U.S.C. § 283. Also, to support its claim that the '123 and '978 patents have been infringed,

Mya Saray attached copies of the '123 and '978 patents, as well as photographs of AAA Wholesale's infringing hookahs. Taking these allegations to be true, as the Court must, Mya Saray has adequately stated patent infringement claims on which it may recover. *See, e.g., LG Elecs., Inc. v. Advanced Creative Computer Corp.,* 212 F.Supp.2d 1171, 1176 (N.D. Cal. 2002).

**3. <u>Amount of Money at Stake</u>**

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico,* 238 F.Supp.2d at 1176. Here, by its motion for default judgment, Mya Saray is not seeking monetary damages, but only injunctive relief, despite the fact that AAA Wholesale (1) engaged in the importation, advertising, sale, and distribution of counterfeit hookahs bearing Mya Saray's QT Base trade dress; and (2) imported, sold, and offered for sale of counterfeit hookahs that infringe Mya Saray's '123 and '978 patents.

AAA Wholesale's continued infringement despite this lawsuit and several attempts by Mya Saray to stop AAA Wholesale's infringement augments the seriousness of AAA Wholesale's conduct. Given that AAA Wholesale's conduct may cause confusion or mistake or otherwise deceive customers, and AAA Wholesale's failure to comply with the judicial process or to participate in any way in the present litigation, the imposition of a substantial monetary award would be justified, even though Mya Saray is only seeking entry of a permanent injunction.

This factor therefore favors the entry of default.

**4. <u>Possibility of Dispute Concerning Material Facts</u>**

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Here, Mya Saray filed a well-pleaded complaint alleging the facts necessary to establish its claims. AAA Wholesale has not responded to any of the

proceedings in this case, and thus no dispute has been raised regarding the material averments of the Complaint. The likelihood that any genuine dispute may exist is, at best, remote.

This factor therefore favors the entry of default judgment.

**5. Whether Default Was Due to Excusable Neglect**

AAA Wholesale has had over ten months to respond to the Complaint and has not done so. There is no evidence in the record that AAA Wholesale's failure to appear and otherwise defend was the result of excusable neglect. Instead, AAA Wholesale's failure to appear after being served with the Complaint indicates that its failure to appear was willful.

Accordingly, this factor favors the entry of default judgment.

**6. Policy Favoring Decision on the Merits**

District courts have concluded with regularity that this policy, standing alone, is not dispositive. *See PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, AAA Wholesale's failure to answer Mya Saray's Complaint makes a decision on the merits impractical, if not impossible. Therefore, this factor does not preclude the Court from entering default judgment against AAA Wholesale.

**C. Mya Saray Is Entitled To A Permanent Injunction As A Result Of AAA Wholesale's Trademark Infringement and Patent Infringement**

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v.*

*MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

**1. A Permanent Injunction Should Issue To Stop AAA Wholesale's Trade Dress Infringement And Unfair Competition**

Intangible injuries, such as damage to goodwill, qualify as irreparable harm. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 97, 603 (9th Cir. 1991). Furthermore, irreparable harm is caused when the defendant uses trade dress that is confusingly similar to the plaintiff's trade dress and jeopardizes the plaintiff's ability to obtain a reasonable return on a substantial investment. *Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521, 526 (9th Cir. 1984).

Here, allowing AAA Wholesale to continue to infringe on Mya Saray's trade dress will result in loss of control, reputation, goodwill, and the ability to achieve a return on a substantial investment. AAA Wholesale has used, and will continue to use, Mya Saray's trade dress to trade on and damage Mya Saray's goodwill, which Mya Saray has built up over several years in the industry.

Further, where "the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010). On the other hand, loss of reputation and goodwill and investment as a result of consumer confusion imposes a significant hardship on the trademark holder. *See id.* Here, the hardship on Mya Saray is severe if an injunction is not issued, while there is no undue hardship on AAA Wholesale if such relief is provided. Mya Saray will suffer irreparable harm from AAA Wholesale's infringing activities through loss of control of its products, reputation, goodwill, and ability to generate a return on its investment. AAA

Wholesale, on the other hand, will suffer nothing more than the loss of ill-gotten gains. AAA Wholesale's continued sale of its infringing will only allow AAA Wholesale to use Mya Saray's trade dress to trade on and further damage Mya Saray's goodwill.

In addition, an injunction that prevents consumer confusion in trademark cases serves the public interest. *Internet Specialties West, Inc. v. Milon-Digiorgio Enters*, 559 F.3d 985, 993 (9th Cir. 2009); *see also Vertos Med., Inc. v. Globus Med., Inc.*, 2009 U.S. Dist. LEXIS 110463, 32 (N.D. Cal. Nov. 6, 2009) ("In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused."). An injunction here will serve the public interest by preventing consumer confusion regarding Mya Saray's and AAA Wholesale's products.

**2. <u>A Permanent Injunction Should Issue To Stop AAA Wholesale's Patent Infringement</u>**

Numerous market effects that cannot be compensated in dollars, that are unquantifiable, or both – in other words, "irreparable" – are of particular concern. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) ("The patent statute further provides injunctive relief . . . against future infringement which may have market effects never fully compensable in money."); *Coca-Cola Co. v. Alma-Leo USA, Inc.*, 719 F. Supp. 725, 729 (N.D. Ill. 1989) (setting forth that unquantifiable harms, or harms that cannot be effectively measured, are irreparable).

Mya Saray expended significant time and financial resources to develop its patented hookahs. As discussed in detail above, AAA Wholesale are illegally importing, offering for sale, and selling infringing hookahs to customers in direct competition with Mya Saray. Harm inevitably follows. Indeed, AAA Wholesale's infringing activity could result in a multitude of harms to Mya Saray that would be

difficult to quantify including fewer customer orders, reduced margins, potential market share loss, damage to the reputation of Mya Saray's products, and damage to Mya Saray's relationships with consumers. These damages are not easily susceptible of measurement or quantification, and thus irreparable injury to Mya Saray is present. *See Zen Design Group, Ltd. v. Clint,* No. 08–cv–14309, 2009 WL 4050247, at *5 (E.D. Mich. Nov. 23, 2009) (entering a default judgment of patent infringement and finding irreparable harm where the infringement has caused, or is likely to cause, irreparable price erosion as well as injury to the patentee's goodwill).

Furthermore, AAA Wholesale's infringement has caused, or is likely to cause, irreparable price erosion. As in *Zen Design*, "[w]ithout an injunction, [AAA Wholesale] will continue to flood [the arena] with infringing products that appear [virtually] identical to [Mya Saray's] patented products. [AAA Wholesale] will have a significant advantage since [they] did not incur costs in developing the [patented hookahs], yet [are] able to reap the significant benefits of [selling hookahs containing Mya Saray's patented technology]." 2009 WL 4050247, at *5.

Also, AAA Wholesale's infringing activity is causing irreparable harm because Mya Saray is being deprived of its right of exclusive manufacture and sale of its patented hookahs. It would be difficult, if not impossible, to calculate how many existing or potential consumers chose to purchase AAA Wholesale's infringing product instead of Mya Saray's products. There is, now, no way to know the extent of Mya Saray's long-term harm and concomitant erosion of exclusive patent rights due to AAA Wholesale's infringement. Courts in similar situations have granted injunctive relief because these injuries cannot be readily quantified: "Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers

may have established relationships with infringers." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

Moreover, AAA Wholesale's continued infringement will likely encourage others to copy Mya Saray's patented hookahs and to develop and sell similar infringing hookahs in direct competition with Mya Saray. It is difficult to earn respect in the marketplace amongst competitors if patent rights are not enforced by the courts. Businesses routinely expect patent suits will settle for money. Without the fear of an injunction, businesses will treat patent infringement as a "cost" of doing business, but only if they are "caught." By allowing businesses to treat patents as a mere cost of doing business, the principal value of a patent – the right to exclude others is vitiated.

AAA Wholesale is reaping and will continue to reap the fruits of Mya Saray's time and resources expended in developing its patented hookahs. The hardships most certainly tilt in Mya Saray's favor. The harm that Mya Saray may suffer far outweighs any harm that AAA Wholesale may suffer for several reasons. AAA Wholesale imports and sells several other hookah products that do not infringe the '123 and '978 patents. An injunction will not prevent AAA Wholesale from continued sale of those other products. Thus, any potential prejudice to AAA Wholesale is small because the requested injunction will not prevent AAA Wholesale from conducting other business. *See, e.g., Henkel Corp. v. Coral, Inc.*, 21 U.S.P.Q.2d 1081, 1101 (N.D. Ill. 1990) (granting an injunction where the defendant could switch to selling a non-infringing product even though it was required to raise its prices, or reduce its profit).

In any event, any financial harm to AAA Wholesale from an injunction relating to its infringing hookahs is self-inflicted. AAA Wholesale took a calculated risk when it intentionally imported, sold, and offered to sell hookahs that it knew were the subject of the '123 and '978 patents. Under such circumstances, courts refuse to

weigh any "harm" to the infringer when it "assumed the risk." *See Smith*, 718 F.2d at 1581 (reversing denial of an injunction where infringer was aware of patents and "took a calculated risk that it might infringe those patents").

Finally, the public interest favors an injunction for two reasons: (1) the public interest favors securing the rights of valid patents like the patent-in-suit, and (2) an injunction against AAA Wholesale's "Fine" and "Modern" hookahs will not harm the public. First, "public policy favors protection of the rights secured by valid patents," including the right to prevent infringement through injunctive relief. *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). "This is embodied in the Constitution and our patent laws." *Hybritech, Inc. v. Abbott Labs.*, 4 U.S.P.Q.2d 1001, 1015 (C.D. Cal. 1987). Without the right to obtain an injunction, the right to exclude granted to the patentee [by the Constitution and Congress] would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." *Smith*, 718 F.2d at 1578. The grant of injunction in this case would further the public's confidence in the patent and judiciary systems and provide a positive incentive for those in the concrete flatwork industry to continue researching and patenting new ideas without the fear that their patents will be useless to cease infringement when it begins.

Second, enjoining AAA Wholesale's infringing activities will not harm the public. There are myriad other hookahs on the market. The public will still be able to purchase non-infringing hookahs from other manufacturers, including AAA Wholesale, despite an injunction against AAA Wholesale's importation, offer for sale, and sale of the "Fine" and "Modern" hookahs. *See, e.g., Hybritech,* 4 U.S.P.Q.2d at 1015 (granting injunction on products for which alternatives were available in the market).

## III. CONCLUSION

AAA Wholesale failed to answer or otherwise respond to Mya Saray's Complaint, and has otherwise failed to appear in this lawsuit. Consequently, the Clerk of this Court duly entered a default against AAA Wholesale, pursuant to Federal Rule of Civil Procedure 55(a). Mya Saray's allegations in its Complaint that AAA Wholesale infringed Mya Saray's trade dress and patent rights are therefore taken as true. Because of AAA Wholesale's infringement, Mya Saray respectfully requests that this Court enter the Permanent Injunction attached hereto as Exhibit A.

Dated: October 21, 2014

SHOOK HARDY & BACON L.L.P.

By: */S/ Tony M. Diab*
Tony M. Diab
Attorneys for Plaintiff Mya Saray L.L.P.

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On October 23, 2014 I served on the interested parties in said action the within:

**MYA SARAY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT BY DEFAULT AGAINST AAA WHOLESALE DISTRIBUTORS CORP. PURSUANT TO FED. R. CIV. P. 55(B((2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☒ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (E-MAIL) I caused such document(s) to be served via email on the interested parties at their e-mail addresses listed.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above. The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

☐ (HAND DELIVERY) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, to be delivered by their next business day delivery service to the addressee designated.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 23, 2014, at Irvine, California.

Kim Brunton
(Type or print name)

(Signature)

# SERVICE LIST

*Mya Saray LLC v. Zahrah Corporation, et al.*
USDC Case No: 8:13-cv-01828-R-DFM

Hussein Nalomany
AAA Wholesale Distributors Corporation
1129 Longfellow Avenue
Bronx, NY 10459